1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

DFSB KOLLECTIVE CO. LTD., et al.,

Plaintiffs,

v.

YOUSUF BOURNE, et al.,

Defendants.

Case No.: 11-1046 PJH (JSC)

**TENTATIVE REPORT AND RECOMMENDATION TO DENY PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT (Dkt. No. 30)**

This Order addresses whether Korean companies can pursue a lawsuit in California against an Australian defendant for contributing to the illegal downloading of Korean songs over the Internet.  Now before the Court is Plaintiffs' Motion for Default Judgment against Defendant Yousuf Bourne. (Dkt. No. 30.)  Korean corporations DFSB Kollective Co. Ltd. ("DFSB"), Nega Network, Jungle Entertainment, Woolim Entertainment, Aftermoon Music Entertainment, Inc., and Drug Records (collectively "Plaintiffs") allege Defendant, who is a resident of Australia, made Plaintiffs' copyrighted music available for unauthorized download through his websites bww2.com and forums.bww2.com/index.  After considering the briefing provided by Plaintiffs, and with the benefit of oral argument on June 7, 2012 as well as Plaintiffs' supplemental declaration, the Court tentatively recommends DENIAL of Plaintiffs' motion for lack of personal jurisdiction.

United States District Court
Northern District of California

# BACKGROUND

### A. <u>Plaintiffs' Allegations</u>

Plaintiffs are Korean companies with their principal places of business in Seoul, Korea.  (Dkt. No. 1 ¶ 7-12.)  They are the owners, distributers, and licensees of Korean pop music recordings to which they own exclusive rights under the United States Copyright Act. (Dkt. No. 1 ¶ 7-13.)

Defendant Yousuf Bourne ("Bourne"), an individual, is a resident of Australia.  (Dkt. No. 1 ¶ 17.)  He operated websites located at bww2.com and forums.bww2.com/index ("Websites").   He also operated accounts through numerous social networking and online video websites using a number of identities and aliases.  (Dkt. No. 1 ¶ 19.)  These accounts include Facebook, hi5.com,[1] DeviantArt,[2] 4Shared,[3] and Filestube[4] ("Accounts").  (Dkt. No. 30 at 3.)  Plaintiffs claim that Defendant's Websites are used to disseminate Plaintiffs' unlawfully copied content to Internet users.  (Dkt. No. 1 ¶ 19.)

Plaintiffs allege that Defendant "is one of the biggest illegal uploaders (and free download link providers) of Korean music in the world."  (Dkt. No. 30 at 29.)  Defendant's Accounts and Websites provide links to infringing content available on third-party websites. (Dkt. No. 1 ¶ 19.)  The infringing content includes, but is not limited to, Plaintiffs' registered copyrighted works.  (Id. ¶ 20.)  By visiting Defendant's Websites, Internet users were able to click on a link next to an image of the copyrighted album they wished to listen to or download, and they were then directed to a third-party website.  (Dkt. No. 1 ¶ 22.)  Once there, users were given the option to download all or part of the album from the third-party website.  (Dkt. No. 1 ¶ 23.)

---

[1] Facebook and hi5 are social networking websites.

[2] DeviantART is "a platform that allows emerging and established artists to exhibit, promote, and share their works within a peer community  dedicated to the arts."  About deviantART, deviantART (June 5, 2012, 1:34 PM), http://about.deviantart.com.

[3] 4shared.com is an online file sharing and storage website.

[4] Filestube is a "search engine designed to search files in various file sharing and uploading sites." About Filestube.com, Filestube (June 15, 2012, 1:31 PM), www.filestube.com/about.html.

Plaintiffs have submitted a list of their copyrighted works which were allegedly infringed through links provided on Defendant's Accounts and Websites.  (Dkt. No. 1 Ex. A, ¶¶ 13, 35.)  Plaintiffs' allegations, though not entirely clear, suggest that Internet users are not able to download Plaintiffs' copyrighted works directly from Defendant's Websites; instead, Plaintiffs assert that Defendant contributes to copyright infringement by providing a map for Internet users to locate and download copyrighted songs located in storage lockers, to which Plaintiffs claim that Defendant directly uploaded files, or other third-party websites not under Defendant's direct control.  (Dkt. No. 30 at 6.)

Plaintiffs further allege that Defendant derives revenue "by driving traffic to advertisers who have paid to be included on Defendant's Websites and/or accounts."  (Dkt. No. 30 at 4.)  Plaintiffs' Exhibits include two advertisements that appear on Defendant's Websites: one advertises Full Sail University, which is located in Florida, and the other advertises KoreanCupid.com, an online dating website operated by a company based in Australia.[5] (Dkt. No. 30, Ex. C. at 98-99.)   Plaintiffs also claim that Defendant "earns money through the Websites for certain downloads of his content, including the DFSB Plaintiffs' work" but offers no additional details to support this general allegation.  (Dkt. No. 30 at 4.)

B.  **Procedural History**

In 2010, Plaintiffs contacted SoftLayer, Inc., the operator of Defendant's website located at bww2.com, concerning Defendant's alleged infringing conduct.  (Dkt. No. 30 at 30.)  The operator responded by removing the infringing content from the website, and by identifying Yousuf Bourne as the registrant and operator of the website.   (Dkt. No. 30 at 30.)  On March 7, 2011, Plaintiffs filed a complaint against Defendant alleging copyright infringement and subsequently filed a Proof of Service with the Court.  Plaintiffs represent that numerous notices were sent to Defendant regarding his copyright infringement.  (Dkt. No. 30 at 19.)  However, Defendant has never contacted DFSB or "anyone associated with

---

[5] "KoreanCupid.com is operated by Cupid Media Pty Ltd, a company that specializes in the development of database-driven dating sites. Cupid Media was founded in 1999 and is based on the Gold Coast, Australia." Who Owns KoreanCupid.com, KoreanCupid.com (June 14, 2012, 3:34 PM), http://www.koreancupid.com/About.cfm.

United States District Court
Northern District of California

1    the DFSB Plaintiffs in response to any of these notices." (Dkt. No. 30 at 19.) Defendant's

2    only communication was a letter he sent to the Court on April 5, 2011 denying any

3    involvement with bww2.com and all claims made against him. (Dkt. No. 11.) The district

4    court thereafter entered Defendant's default and Plaintiffs filed the pending motion for default

5    judgment, which was referred to this Court for a Report and Recommendation.

6            This Court ordered Plaintiffs to show cause regarding jurisdiction and service of

7    Process; specifically, to address whether Plaintiffs had properly served Defendant and had

8    met their burden of showing that this Court has personal jurisdiction of the Australian

9    Defendant. (Dkt. Nos. 37, 40.) After Plaintiffs responded, and following oral argument on

10   June 7, 2012, Plaintiffs filed a supplemental declaration to support their Motion for Default

11   Judgment. (Dkt. No. 45.)

12           In that supplemental declaration Plaintiffs alleged that users in California have

13   accessed Defendant's Websites. Specifically, Plaintiffs represent that bww2.com was "one of

14   the most popular illegal Korean music download sites in the world," and that at times it

15   generated as much Internet traffic as legal Korean music sites, such as MTV Korea. (Id. ¶ 2.)

16   With respect to California, Plaintiffs offer evidence that bww2.com  "is often mentioned and

17   referred to by users on the forum section" of the website crunchyroll.com as a source of

18   Korean music. (Id. ¶ 4.) According to Plaintiffs, crunchyroll.com is a California based

19   Asian-American content/community site with a high concentration of users based in

20   California. (Id.) Based on this information, Plaintiffs assert that they have a good faith belief

21   that users in California accessed Defendant's Websites and Accounts. (Id.)

22                                        **DISCUSSION**

23            "A defendant's default does not automatically entitle the plaintiff to a court-ordered

24   judgment." PepsiCo, Inc. v. Cal. Sec. Cans, 283 F. Supp. 2d 1172, 1174 (C.D. Cal 2002).

25   After a defendant's default is entered, a court must take "the well-pleaded factual allegations"

26   in the complaint "as true." DIRECTV, Inc. v. Hoa Huynh, 503 F.3d 847, 854 (9th Cir. 2007).

27   However, the "defendant is not held to admit facts that are not well-pleaded or to admit

28   conclusions of law." Id. In addition, when considering a motion for default judgment, a

"district court has an affirmative duty to look into its jurisdiction over both the subject matter and the parties." In re Tuli, 172 F.3d 707, 712 (9th Cir. 1999). "To avoid entering a default judgment that can later be successfully attacked as void, a court should determine whether it has the power, i.e., the jurisdiction, to enter the judgment in the first place." Id. The Court is also required to "assess the adequacy of the service of process on the party against whom default is requested." Sanrio Co., Ltd. v. J.I.K. Accessories, 2012 WL 1366611 *2 (N.D. Cal. April 19, 2012). Thus, as a preliminary matter, the Court must consider the adequacy of service of process and whether it can exercise personal jurisdiction over the Australian Defendant in this action—the subjects of the Court's Order to Show Cause.

A. **Service of Process**

"A federal court does not have jurisdiction over a defendant unless the defendant has been served properly under Fed. R. Civ. P. 4." Direct Mail Specialists, Inc. v. Eclat Computerized Technologies, Inc., 480 F.2d 685, 688 (9th Cir. 1988). Pursuant to Rule 4(f)(1) of the Federal Rules of Civil Procedure, an individual "may be served at a place not within any judicial district of the United States by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents." Fed. R. Civ. P. 4(f)(1). Article 15 of the Hague Convention provides that:

> Where a writ of summons or an equivalent document had to be transmitted abroad for the purpose of service, under the provisions of the present Convention, and the defendant has not appeared, judgment shall not be given until it is established that a) the document was served by a method prescribed by the internal law of the State addressed for service of document in domestic actions upon persons who are within its territory, or b) the document was actually delivered to the defendant or to his residence by another method provided by this Convention, and that in either of these cases the service or the delivery was effected in sufficient time to enable the defendant to defend.

Here, Defendant is a resident of Australia.  Both the United States and Australia are parties to the Hague Convention.[6]  An official Australian process server served Defendant via substituted service on his father on July 20, 2011.  (Dkt. No. 40, Drey Dec. ¶ 3.)  This method of service is allowed under the Hague Convention.  Hadjdjelloul v. Global Machinery Co., No. 10-4782 (DSD/SER), 2011 WL 4860025 *3 n.6 (D. Minn. Oct. 7, 2011).  Furthermore, Defendant was served at the address which he listed as the return address in his letter to the court.  (Dkt. No. 11 at 3.)  This address was also provided by SoftLayer, Inc. as belonging to Defendant.  (Dkt. No. 30, Ex. G at 166.)  Moreover, Defendant had sufficient time to enable him to defend himself.  As such, the service of process was sufficient under Rule 4(f)(1).

B. **Personal Jurisdiction**

Where, as here, no federal statute authorizes personal jurisdiction, a district court applies the law of the state in which the court sits.  Mavrix Photo, Inc. v. Brand Techs., Inc., 647 F.3d 1218, 1223 (9th Cir. 2011).  California's long-arm statute has the same due process requirements as the federal long-arm statute.  Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 801 (9th Cir. 2004).  The Due Process Clause requires that nonresident defendants have "minimum contact" with the forum state such that the exercise of personal jurisdiction "does not offend traditional notions of fair play and substantial justice."  Int'l Shoe Co. v. State of Wash., Office of Unemployment Comp. & Placement , 326 U.S. 310, 316 (1945).

Plaintiffs contend that this Court has specific jurisdiction of Defendant in this case. The Ninth Circuit employs a three-prong test ("Minimum Contact Test") to determine whether a party has sufficient minimum contacts to be susceptible to specific jurisdiction:

1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum, or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; 2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and 3) the

---

[6] Status Table – 14: Convention of 15 November 1965 on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, http://www.hcch.net/index_en.php?act=conventions.status&cid=17 (last visited June 20, 2012.)

exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

Schwarzenegger, 374 F.3d at 802.

The plaintiff bears the burden of satisfying the first two prongs of this test.  Id.  If the plaintiff satisfies this burden, the burden shifts to the defendant to make a "compelling case" that the third prong—the exercise of jurisdiction is reasonable—is not met.  Burger King Corp., 471 U.S. 462, 476-78 (1985).  "If any of the three requirements is not satisfied, jurisdiction in the forum would deprive the defendant of due process of law." Pebble Beach Co. v. Caddy, 453 F.3d 1151, 1155 (9th Cir. 2006) (internal citations and quotations omitted). In addition, "[g]reat care and reserve should be exercised when extending our notions of personal jurisdiction into the international field."  Core-Vent Corp. v. Nobel Indus. AB, 11 F.3d 1482, 1489 (9th Cir. 1993) (internal citations and quotation marks omitted).  "Litigation against an alien defendant creates a higher jurisdictional barrier than litigation against a citizen from a sister state because important sovereignty concerns exist."  Id. (internal citations and quotations omitted).

### 1. Purposeful Direction

The first prong of the minimum contact test "ensures that a defendant will not be haled into a jurisdiction solely as result of random, fortuitous, or attenuated contacts, or of the unilateral activity of another party or a third person."  Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985) (internal citations and quotations omitted).  This prong may be satisfied by either purposeful availment or purposeful direction.  Pebble Beach, 453 F.3d at 1155. While evidence of purposeful direction generally consists of actions taking place outside a forum that are directed at the forum, evidence of availment is generally action taking place in the forum that invokes the benefits and protections of the laws in that forum. Schwarzenegger, 374 F.3d at 802-03.  Purposeful availment is most often used in cases related to contract disputes, and purposeful direction is used in tort cases.  Id. at 802.  Copyright infringement is similar to intentional torts; hence, the proper analytical framework in copyright infringement cases is purposeful direction.  Mavrix Photo, Inc. v. Brand Technologies, Inc., 647 F.3d 1218, 1228 (9th Cir. 2011).

The Ninth Circuit uses the three-part test outlined in <u>Calder v. Jones</u>, 465 U.S.783 (1984), to evaluate purposeful direction.  To satisfy this test, a defendant "must have 1) committed an intentional act, which was 2) expressly aimed at the forum state and 3) caused harm, the brunt of which is suffered and which the defendant knows is likely to be suffered in the forum state."  <u>Pebble Beach</u>, 453 F.3d at 1156 (internal citations and quotations omitted). "There is no requirement that the defendant have any physical contacts with the forum." <u>Brayton Purcell LLP v. Recordon & Recordon</u>, 606 F.3d 1124, 1128 (9th Cir. 2010) (internal citations and quotations omitted).

### a.  Intentional Act

An intentional act, within the meaning of the <u>Calder</u> test, refers to "an intent to perform an actual, physical act in the real world, rather than an intent to accomplish a result or consequence of that act."  <u>Schwarzenegger</u>, 374 F.3d at 806.  Here, Plaintiffs assert that Defendant's intentional acts are "Defendant's uploading of the DFSB Plaintiff's Works, provision of links to these files, and advertising to his websites."  (Dkt. No. 40 at 4.)  These intentional acts satisfy the first prong of the <u>Calder</u> test.

### b.  Expressly Aimed at Forum State

Plaintiffs argue that Defendant has expressly aimed his infringing conduct at California because he operated commercial and interactive websites that "targeted California residents indiscriminately."  (Dkt. No. 40 at 3.)  Further, Defendant sometimes requested users of his Websites, including, presumably, users located in California, to become members of his Accounts to view his offerings and purchase illegal downloads from others.  (<u>Id.</u>)  In other words, Plaintiffs contend that because Defendant operated a nation-wide, indeed, global-wide, accessible website directing users to infringing content, Defendant's conduct was aimed at California.  Indeed, at oral argument, Plaintiffs stated that because of the nation-wide reach of Defendant's website, specific personal jurisdiction of Defendant for these claims would be proper in any state in the United States, including Wyoming.

The Court disagrees with Plaintiffs' broad view of personal jurisdiction.  The Ninth Circuit has "struggled with the question whether tortious conduct on a nationally accessible

United States District Court
Northern District of California

1  website is expressly aimed at any, or all, of the forums in which the website can be viewed."

2  Mavrix Photo, Inc., 647 F.3d at 1229.  One rule, however, is clear: "A defendant has not

3  purposefully availed himself of the privilege of conducting activities in a forum state merely

4  because he operates a website which can be accessed there."  American Auto. Ass'n, Inc. v.

5  Darba Enter. Inc., 2009 WL 1066506 *4 (N.D. Cal. April 21, 2009);  see also  Mavrix Photo,

6  Inc. , 647 F.3d at 1229 ("'maintenance of a passive website alone cannot satisfy the express

7  aiming prong.')  On the other hand, "operating even a passive website in conjunction with

8  "something more"—conduct directly targeting the forum—is sufficient.'"  Mavrix Photo, Inc.,

9  647 F.3d at 1229 (internal citations omitted).  In determining whether a nonresident defendant

10  has done "something more," the Ninth Circuit has considered several factors, including the

11  interactivity of the defendant's website, the geographic scope of the defendant's commercial

12  ambitions, and whether the defendant "individually targeted" a plaintiff known to be a forum

13  resident. Id. (internal citations omitted).

14       The Ninth Circuit's recent decision in Mavrix Photo, Inc. is on point.  There, the

15  plaintiff brought suit in California against the defendant Brand, an Ohio corporation, for

16  posting the plaintiff's copyrighted celebrity photos on Brand's popular website,

17  www.celebrity-gossip.net.  A critical issue on appeal was whether the plaintiff had met its

18  "purposeful direction" burden and, in particular, whether Brand had expressly aimed its

19  conduct at California.  The Ninth Circuit held that it had because Brand had "used [the

20  plaintiff's] copyrighted photos as part of its exploitation of the California market for its own

21  gain." Id. at 1229.  Brand made money by selling advertising space on its website to third-

22  party advertisers and a substantial number of "hits" to Brand's website came from California

23  residents.  The court concluded that it could infer that Brand was making money through these

24  California resident hits because "some of the third-party advertisers on Brand's website had

25  advertisements directed to Californians."  Id.  These included advertisements for jobs, hotels,

26  and vacations in California. Id. at 1222.  Thus, concluded the court, "[t]he fact that the

27  advertisements targeted California residents indicates that Brand knows—either actually or

28  constructively—about its California user base, and that it exploits that base for commercial

1   gain by selling space on its website for advertisements." Id.  Further, although Brand did not

2   market its website to California local media, "Brand operated a very popular website with a

3   specific focus on the California-centered celebrity and entertainment industries." Id.  The

4   court concluded: "[b]ased on the website's subject matter, as well as the size and commercial

5   value of the California market, . . . Brand anticipated, desired and achieved a substantial

6   California viewer base." Id. at 1230.

7            Defendant's Websites, like Brand's website in Mavrix, does not charge users for a

8   service; instead, it makes money through third-party advertisers.  Although not specifically

9   alleged, it is reasonable to infer that the more traffic or "hits" to Defendant's websites, the

10  more money he would make.  Unlike Brand, however, Defendant did not encourage "hits" to

11  his website by posting the infringing work on his Websites; instead, his Websites and

12  Accounts encourage hits by directly linking users to third-party websites where the user can

13  download the copyrighted Korean songs.  Notwithstanding this difference, it is a

14  "commercial" website in the same manner as Brand's.

15           Unlike Mavrix, however, there is nothing in the record that provides the "something

16  more" to show that Defendant's commercial activities targeted California.  Plaintiffs do not

17  allege that any of the advertisements on Defendant's Websites targeted Californians.  Their

18  exhibits include two advertisements, one for an Australian dating site and the other regarding

19  a Florida university.  Neither can reasonably be interpreted as related to or directed to

20  California.  And the subject matter of the Websites—linking users to websites where they can

21  download Korean language songs—is also not related to California.  In sum, there is nothing

22  that suggests Defendant was attempting to commercially exploit the California market.

23           Plaintiffs' emphasis on the interactive nature of the Websites is unavailing.  The

24  operation of an interactive, commercial website can sometimes be sufficient to satisfy the

25  "expressly aiming" prong of the Calder test.  See Cybersell, Inc. v. Cybersell, Inc., 130 F.3d

26  414, 418 (9th Cir. 1997).  Plaintiffs appear to allege that Defendant's Websites were

27  interactive in two ways: first, users could register to become website members.  Second, users

28  could "interact" with Defendant's Websites by clicking on links that direct users to a third-

10

party website. The Court is not aware of, and Plaintiffs have not cited any, cases that suggest this level of interactivity is sufficient to support a finding of expressly aiming conduct at California, at least where, as here, there is no other indication that the defendant intended to profit from the California market. Indeed, the website in <u>Mavrix</u> was even more interactive than the Websites at issue here: visitors could post comments on articles, vote in polls, subscribe to an email newsletter, join a membership club, and submit news tips and photos. 647 F.3d at 1222. Yet, this interactivity did not fit into the Ninth Circuit's analysis of whether the defendant had expressly aimed his wrongful conduct at California. <u>Id.</u> at 1229-30.

Other cases from this District highlight the allegations and evidence lacking here. In <u>Quigley v. Guvera IP Pty Ltd.</u>, 2010 WL 5300867 (N.D. Cal. Dec. 20, 2010), for example, the court held that the expressly aiming prong was satisfied where consumers were able to obtain free music from the defendant's website only in exchange for providing information about themselves which was then matched with advertisers' preferences; thus, the defendant generated income through users' interaction with the site. <u>Id.</u> Even then, however, the defendant had also established a California-specific privacy policy in order to comply with California law, <u>id.</u> at *4, and it used a girl from California to explain the website's payment model. In light of all of this evidence, the court found that the defendant had intentionally targeted consumers in California. <u>Id.</u> at *4.

Similarly, in <u>American Auto. Ass'n, Inc. v. Darba Enterprises, Inc.</u>, 2009 WL 1066506 (N.D. Cal. April 21, 2009), the court held that a website's interactivity satisfied the expressly aimed prong where users had to enter their contact information on the website in order to obtain any information in the first place, and then the website owner sold that contact information. <u>Id.</u> at *4-5. In other words, as in <u>Quigley</u>, the website made money from the interactivity.

Here, unlike the above two cases, there is no allegation that Defendant uses the Websites' interactivity commercially; instead, as in <u>Mavrix</u>—and no doubt millions of other websites—Defendant profited from his Websites by selling advertising. Unlike <u>Mavrix</u>, however, there is nothing in the record that suggests that the advertising on the Websites

11

targeted California. "If the defendant merely operates a website, even a 'highly interactive' website, that is accessible from, but does not target, the forum state, then the defendant may not be haled into court in that state without offending the Constitution." Be2 LLC v. Ivanov, 642 F.3d 555, 559 (7th Cir. 2011).

Finally, Plaintiffs contend that Defendant expressly aimed his wrongful conduct at California because his Accounts—which publicized and directed traffic to his Websites—are with California-based Internet companies, such as Facebook. (Dkt. No. 40 at 4-5.)  The Court is not persuaded that because a person uses a Facebook account to contribute to copyright infringement that means there is personal jurisdiction of that person in California.  Such a holding would open up California's courts to a limitless number of cases and would be an unprecedented expansion of personal jurisdiction.  Cf. CollegeSource, Inc. v. AcademyOne, Inc., 653 F.3d 1066, 1075-76 (9th Cir. 2011) ("[i]f the maintenance of an interactive website were sufficient to support general jurisdiction in every forum in which users interacted with the website, the eventual demise of all restrictions on the personal jurisdiction of state courts would be the inevitable result") (internal quotation marks and citation omitted).

The Court recognizes that in DFSB Kollective Co., Ltd. v. Jenpoo, 2011 WL 2314161 (N.D. Cal. June 10, 2011) and DFSB Kollective Co., Ltd. v. Tran, 2011 WL 6730678 (N.D. Cal. Dec. 21, 2011), the district courts granted Plaintiffs' motions for default judgment under similar circumstances as present here.  In Jenpoo, however, the court did not analyze personal jurisdiction.  The Tran court did substantively address personal jurisdiction, and concluded that Plaintiffs had met their burden, in part because the defendant used California companies Facebook, Twitter and YouTube to promote his websites.  Id. at *3.  Again, this Court disagrees that using the Internet accounts of companies based in California is sufficient to support a finding that a defendant expressly aimed his conduct at California.  To adopt Plaintiffs' reasoning would render the "expressly aimed" prong of the Calder test essentially meaningless as it has become ubiquitous for businesses—large and small—to maintain Facebook or Twitter accounts for marketing purposes and would subject millions of persons around the globe to personal jurisdiction in California.

United States District Court
Northern District of California

12

Consequently, Plaintiffs have not established that Defendant's Websites were "expressly aimed" at California.  Without "something more" Plaintiffs' allegations are not sufficient to satisfy the <u>Calder</u> test.

### c.  Causing Harm Likely to be Suffered in the Forum State

The third requirement of the <u>Calder</u> test is satisfied in cases where the defendant has "caused harm that it knows is likely to be suffered in the forum state."  <u>Mavrix Photo, Inc.</u>, 647 F.3d at 1231.  In copyright cases this requirement is generally satisfied when the plaintiff resides in the forum state.  <u>See, e.g.</u>, <u>Brayton Purcell LLP</u>, 606 F.3d at 1131; <u>see also</u> <u>CollegeSource, Inc.</u>, 653 F.3d at 1077 ("[w]e have repeatedly held that a corporation incurs economic loss, for jurisdictional purposes, in the forum of its principal place of business."  "In appropriate circumstances [however,] a corporation can suffer economic harm both where the bad acts occurred and where the corporation has its principal place of business."  <u>Dole Food Co. Inc, v. Watts</u>, 303 F.3d 1104, 1113 (9th Cir. 2002).  "[T]he 'brunt' of the harm need not be suffered in the forum state.  If a jurisdictionally sufficient amount of harm is suffered in the forum state, it does not matter that even more harm might have been suffered in another state."  <u>Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme</u>, 433 F.3d 1199, 1207 (9th Cir. 2006).

In <u>Mavrix</u>, for example, the plaintiff was a Florida corporation.  The Ninth Circuit nonetheless held that the harm requirement was satisfied because by publishing the infringing photos of the celebrity couple, the defendant had destroyed the market value of the plaintiffs' copyrighted photos of the couple; in other words, there was no market for the plaintiff's photos if the photos were already available on the Internet.  The court held further that it was foreseeable that this harm would occur in California as well as Florida because "[a] substantial part of the photos' value was based on the fact that a significant number of Californians would have bought publications such as *People* and *Us Weekly* in order to see the photos."  <u>Id.</u> at 1231-32.

Plaintiffs have not alleged such comparable harm here; instead, they state that "the fact that [Defendant] relied on several California companies to perpetuate his copyright

infringement only further increased his likely knowledge that California residents would suffer the harm of his intentional actions." (Dkt. No. 40 at 4.)  The problem with this argument is that Plaintiffs do not explain how *California residents* were harmed or why that is the proper inquiry.  In a copyright case, it is usually the plaintiff—who owns the copyright and thus has standing to bring the lawsuit—who is claiming harm.  See, e.g., Mavrix, 647 F.3d at 1222;  Brayton Purcell, 606 F.3d at 1126-27.  Since Plaintiffs do not allege how they as corporations based in Korea suffered any harm in California, Plaintiffs have failed to satisfy the third prong of the Calder test.

## 2.  **The Remaining Factors: Relatedness and Reasonableness**

Since the Court has determined that Plaintiffs have not satisfied the "purposeful direction" requirement of the minimum contacts test, the Court does not have personal jurisdiction of Defendant.  See Pebble Beach, 453 F.3d at 1155.  Accordingly, the Court need not address the remaining minimum contact factors.

### CONCLUSION

Plaintiffs' response to the Court's Show Cause Order does not establish that this Court has specific personal jurisdiction of Defendant, a resident of Australia.  The Court is mindful, however, that the defendant has not appeared and that the issue of personal jurisdiction was raised sua sponte by the Court; in other words, Plaintiffs have not had the opportunity to respond to a motion to dismiss as they would if Defendant had appeared.   Accordingly, the Court will give Plaintiffs an opportunity to respond to this Order before the Court issues a final Report and Recommendation.  In particular, if Plaintiffs wish, on or before July 3, 2012 they may file a brief, not to exceed 10 pages, which explains why the record in this case sufficiently establishes personal jurisdiction of Defendant.

**IT IS SO ORDERED.**

Dated: June 22, 2012.

_____

JACQUELINE SCOTT CORLEY
UNITED STATES MAGISTRATE JUDGE