IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DFSB KOLLECTIVE CO. LTD., et al.,<br><br>　　　　Plaintiffs,<br><br>　　v.<br><br>YOUSUF BOURNE, et al.,<br><br>　　　　Defendants. | Case No.: 11-1046 PJH (JSC)<br><br>**REPORT AND RECOMMENDATION TO DENY PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT (Dkt. No. 30)** |

　　　This Order addresses whether Korean plaintiffs can pursue a lawsuit in California against an Australian defendant for contributing to the illegal downloading of Korean songs over the Internet. Now before the Court is Plaintiffs' Motion for Default Judgment against Defendant Yousuf Bourne. (Dkt. No. 30.) Korean corporations DFSB Kollective Co. Ltd. ("DFSB"), Nega Network, Jungle Entertainment, Woolim Entertainment, Aftermoon Music Entertainment, Inc., and Drug Records (collectively "Plaintiffs") allege Defendant, who is a resident of Australia, made Plaintiffs' copyrighted music available for unauthorized download through his websites bww2.com and forums.bww2.com/index.

　　　On June 22, 2012, the Court issued a Tentative Report and Recommendation to deny Plaintiffs' Motion for Default Judgment due to a failure to make a prima facie showing of personal jurisdiction over Defendant. (Dkt. No. 46.) The Court provided Plaintiffs with the

opportunity to respond to the tentative ruling and has carefully considered the additional points and authorities submitted.  (Dkt. No. 47.)  The Court now issues a final Report and Recommendation to DENY Plaintiffs' motion for default judgment for lack of personal jurisdiction.

## BACKGROUND

### A. Plaintiffs' Allegations

Plaintiffs are Korean companies with their principal places of business in Seoul, Korea.  (Dkt. No. 1 ¶ 7-12.)  They are the owners, distributers, and licensees of Korean pop music recordings to which they own exclusive rights under the United States Copyright Act.  (Dkt. No. 1 ¶ 7-13.)

Defendant Yousuf Bourne ("Bourne"), an individual, is a resident of Australia.  (Dkt. No. 1 ¶ 17.)  He operated websites located at bww2.com and forums.bww2.com/index ("Websites").  He also operated accounts through numerous social networking and online video websites using a number of identities and aliases.  These accounts include Facebook, hi5.com,[1] DeviantArt,[2] 4Shared,[3] and Filestube[4] ("Accounts").  (Dkt. No. 30 at 18-19 ¶ 5.)

Defendant "is one of the biggest illegal uploaders (and free download link providers) of Korean music in the world."  (Dkt. No. 30 at 29.)  Defendant's Accounts and Websites provide links to infringing content available on third-party websites.  (Dkt. No. 1 ¶ 19-23.)  This infringing content includes, but is not limited to, Plaintiffs' registered copyrighted works.  (Id. ¶ 20.)  Upon visiting Defendant's Websites, Internet users were able to click on a link next to an image of the copyrighted album they wished to listen to or download, and they were then directed to a third-party website.  (Dkt. No. 1 ¶ 22-23.)  Once there, users were

---

[1] Facebook and hi5 are social networking websites.

[2] DeviantART is "a platform that allows emerging and established artists to exhibit, promote, and share their works within a peer community dedicated to the arts."  *About deviantART*, deviantART (June 5, 2012, 1:34 PM), http://about.deviantart.com.

[3] 4shared.com is an online file sharing and storage website.

[4] Filestube is a "search engine designed to search files in various file sharing and uploading sites."  *About Filestube.com*, Filestube (June 15, 2012, 1:31 PM), www.filestube.com/about.html.

given the option to download all or part of the album from the third-party website.  (Dkt. No. 1 ¶ 23.)

Plaintiffs have submitted a list of their copyrighted works which were allegedly infringed through links provided on Defendant's Accounts and Websites.  (Dkt. No. 1, Ex. A, ¶¶ 13, 35.)  Plaintiffs' allegations, though not entirely clear, suggest that Internet users are not able to download Plaintiffs' copyrighted works directly from Defendant's Websites; instead, Defendant contributes to copyright infringement by providing a map for Internet users to locate and download copyrighted songs located in storage lockers or other third-party websites.  (Dkt. No. 1 ¶¶ 19-24, 35; Dkt. No. 30 at 18 ¶ 5.)

bww2.com "is often mentioned and referred to by users on the forum section" of the website crunchyroll.com as a source of Korean music.  (Dkt. No. 45 ¶ 4.)  crunchyroll.com is a California-based Asian-American content/community site with a high concentration of users in California.  (Id.)  Based on this information, Plaintiffs have a good faith belief that California users accessed Defendant's Websites and Accounts.  (Id.)

Defendant derives revenue from his illegal activity "by driving traffic to advertisers who have paid to be included on Defendant's Websites and/or accounts."  (Dkt. No. 1 ¶ 22; see also Dkt. No. 30 at 19 ¶ 5.)  Plaintiffs' Exhibits include two advertisements that appear on Defendant's Websites: one advertises Full Sail University, which is located in Florida, and the other advertises KoreanCupid.com, an online dating website operated by a company based in Australia.[5]  (Dkt. No. 30-2 at 3-5.)  Although not alleged in the Complaint, Plaintiffs now contend that Defendant "charged his members for certain services, including to download certain unauthorized music files."  (Dkt. No. 47 at 3.)[6]

---

[5] "KoreanCupid.com is operated by Cupid Media Pty Ltd, a company that specializes in the development of database-driven dating sites.  Cupid Media was founded in 1999 and is based on the Gold Coast, Australia."  *Who Owns KoreanCupid.com*, KoreanCupid.com (June 14, 2012, 3:34 PM), http://www.koreancupid.com/About.cfm.

[6] The Court is uncertain of the basis for this allegation.  The Complaint very specifically alleges that Defendant infringes by posting the copyrighted album covers on his Websites and then providing links to third-party websites where the user can illegally download the copyrighted material. (Dkt. No. 1 ¶¶ 19-20.)  It also alleges that Defendant derives revenue from his Website through advertisements.  (Id.  ¶ 22.)  There is no allegation that users of his

B. **Procedural History**

In 2010, Plaintiffs contacted SoftLayer, Inc., the operator of Defendant's website located at bww2.com, to report Defendant's alleged infringing conduct. (Dkt. No. 30 at 30 ¶ 2.) The operator responded by removing the infringing content from the website and by identifying Yousuf Bourne as the registrant and operator of the website. (Id.) On March 7, 2011, Plaintiffs filed a complaint against Defendant alleging copyright infringement and subsequently filed a Proof of Service with the Court. Prior to filing this lawsuit, DFSB sent numerous notices to Defendant regarding his copyright infringement. (Dkt. No. 30 at 19 ¶ 6.) However, Defendant has never contacted DFSB or "anyone associated with the DFSB Plaintiffs in response to any of these notices." (Id.) Defendant's only communication was a letter he sent to the Court on April 5, 2011 denying any involvement with bww2.com and all claims made against him. (Dkt. No. 11.) The district court thereafter entered Defendant's default, and Plaintiffs filed the pending motion for default judgment, which was referred to this Court for a Report and Recommendation. (Dkt. No. 31.)

This Court subsequently ordered Plaintiffs to show cause as to whether Plaintiffs had properly served Defendant and met their burden to show that this Court has personal jurisdiction of the Australian Defendant. (Dkt. Nos. 37, 40.) After Plaintiffs responded, and following oral argument on June 7, 2012, Plaintiffs filed a supplemental declaration to support their Motion for Default Judgment. (Dkt. No. 45.) On June 22, 2012, having considered oral argument and the supplemental declaration, the Court issued a Tentative Report and Recommendation to deny Plaintiffs' motion for default judgment. (Dkt. No. 46.) Plaintiffs responded with additional points and authorities. (Dkt. No. 47.)

---

Website pay Defendant directly. This new allegation appears to be based solely on the vague declaration statement of Plaintiff's CEO that Defendant "often receives funds for his illegally available downloads." (Dkt. No. 30 at 19 ¶ 5.) That statement, in turn, is based upon a single post in crunchyroll.com in which the poster indicated that if a user goes to the bww2.com sites for music "you needa pay to download." (Dkt. No. 30-2, Ex. C at 117.) Such a statement, however, could be referring to the third-party websites to which Defendant's Websites provided links. Further, since Plaintiffs themselves visited Defendant's Websites (Dkt. No. 30 at 19 ¶ 6), they should have more of a basis for such an allegation than a single, ambiguous posting by an unknown person on an unrelated social network.

4

## DISCUSSION

"A defendant's default does not automatically entitle the plaintiff to a court-ordered judgment." PepsiCo, Inc. v. Cal. Sec. Cans, 283 F. Supp. 2d 1172, 1174 (C.D. Cal 2002). After a defendant's default is entered, a court must take "the well-pleaded factual allegations" in the complaint "as true." DIRECTV, Inc. v. Hoa Huynh, 503 F.3d 847, 854 (9th Cir. 2007). However, the "defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law." Id. In addition, when considering a motion for default judgment, a "district court has an affirmative duty to look into its jurisdiction over both the subject matter and the parties." In re Tuli, 172 F.3d 707, 712 (9th Cir. 1999). "To avoid entering a default judgment that can later be successfully attacked as void, a court should determine whether it has the power, i.e., the jurisdiction, to enter the judgment in the first place." Id.; see also Facebook, Inc. v. Pedersen, 2012 WL 1836257 (N.D. Cal. May 21, 2012) (denying motion for default judgment on the ground that the plaintiff had not met its personal jurisdiction burden). The Court is also required to "assess the adequacy of the service of process on the party against whom default is requested." Sanrio Co., Ltd. v. J.I.K. Accessories, 2012 WL 1366611 *2 (N.D. Cal. April 19, 2012). Thus, as a preliminary matter, the Court must consider the adequacy of service of process and whether it can exercise personal jurisdiction over the Australian Defendant in this action—the subjects of the Court's initial Order to Show Cause.

### A. Service of Process

"A federal court does not have jurisdiction over a defendant unless the defendant has been served properly under Fed. R. Civ. P. 4." Direct Mail Specialists, Inc. v. Eclat Computerized Techs., Inc., 480 F.2d 685, 688 (9th Cir. 1988). Pursuant to Federal Rule of Civil Procedure 4(f)(1), an individual "may be served at a place not within any judicial district of the United States by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents." Fed. R. Civ. P. 4(f)(1). Article 15 of the Hague Convention provides that:

> Where a writ of summons or an equivalent document had to be transmitted abroad for the purpose of service, under the provisions of the present

5

>   Convention, and the defendant has not appeared, judgment shall not be given until it is established that a) the document was served by a method prescribed by the internal law of the State addressed for service of document in domestic actions upon persons who are within its territory, or b) the document was actually delivered to the defendant or to his residence by another method provided by this Convention, and that in either of these cases the service or the delivery was effected in sufficient time to enable the defendant to defend.

Here, Defendant is a resident of Australia. Both the United States and Australia are parties to the Hague Convention.[7] An official Australian process server served Defendant via substituted service on his father on July 20, 2011. (Dkt. No. 40, Drey Dec. ¶ 3.) This method of service is allowed under the Hague Convention. Hadjdjelloul v. Global Machinery Co., 2011 WL 4860025 *3 n.6 (D. Minn. Oct. 7, 2011). Furthermore, Defendant was served at the address he listed as the return address in his letter to the court. (Dkt. No. 11 at 3.) This address was also provided by SoftLayer, Inc. as belonging to Defendant. (Dkt. No. 30-3 at 44.) Moreover, Defendant had sufficient time to defend himself. As such, the service of process was sufficient under Rule 4(f)(1).

### B. Personal Jurisdiction

Plaintiffs contend that this Court has specific jurisdiction of Defendant. "Where, as here, no federal statute authorizes personal jurisdiction, the district court applies the law of the state in which the court sits." Mavrix Photo, Inc. v. Brand Techs., Inc., 647 F.3d 1218, 1223 (9th Cir. 2011). California's long-arm statute has the same due process requirements as the federal long-arm statute. Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 801 (9th Cir. 2004). The Due Process Clause requires that nonresident defendants have "minimum contact" with the forum state such that the exercise of personal jurisdiction "does not offend traditional notions of fair play and substantial justice." Int'l Shoe Co. v. State of Wash., Office of Unemployment Comp. & Placement, 326 U.S. 310, 316 (1945). The Ninth Circuit

---

[7] *Status Table – 14: Convention of 15 November 1965 on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters*, http://www.hcch.net/index_en.php?act=conventions.status&cid=17 (last visited June 20, 2012).

6

1  employs a three-prong test ("Minimum Contact Test") to determine whether a party has
2  sufficient minimum contacts to be susceptible to specific jurisdiction:

> 1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum, or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; 2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and 3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

Schwarzenegger, 374 F.3d at 802.

The plaintiff bears the burden of satisfying the first two prongs of this test. Id. If the plaintiff satisfies this burden, the burden shifts to the defendant to make a "compelling case" that the third prong—the exercise of jurisdiction is reasonable—is not met. Burger King Corp., 471 U.S. 462, 476-78 (1985). "If any of the three requirements is not satisfied, jurisdiction in the forum would deprive the defendant of due process of law." Pebble Beach Co. v. Caddy, 453 F.3d 1151, 1155 (9th Cir. 2006) (internal citations and quotations omitted). In addition, "[g]reat care and reserve should be exercised when extending our notions of personal jurisdiction into the international field." Core-Vent Corp. v. Nobel Indus. AB, 11 F.3d 1482, 1489 (9th Cir. 1993) (internal citations and quotation marks omitted). "Litigation against an alien defendant creates a higher jurisdictional barrier than litigation against a citizen from a sister state because important sovereignty concerns exist." Id. (internal citations and quotations omitted).

**1. Purposeful Direction/ Purposeful Availment**

The first prong of the minimum contact test "ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts, or of the unilateral activity of another party or a third person." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985) (internal citations and quotations omitted). This prong may be satisfied by either purposeful availment or purposeful direction. Pebble Beach, 453 F.3d at 1155. While evidence of purposeful direction generally consists of actions taking place outside a forum that are directed at the forum, evidence of availment is generally action taking place in

7

the forum that invokes the benefits and protections of the laws in that forum. Schwarzenegger, 374 F.3d at 802-03.  Purposeful availment is most often used in cases related to contract disputes, and purposeful direction is used in tort cases.  Id. at 802.  Copyright infringement is similar to intentional torts; hence, the proper analytical framework in copyright infringement cases is purposeful direction.  Mavrix Photo, Inc., 647 F.3d at 1228.

Plaintiffs allege that "[w]hile purposeful direction is 'typically' used in tort cases, it is not the exclusive analysis for personal jurisdiction in tort cases."  (Dkt. No. 47 at 2.)  To support their view, they cite the recent Supreme Court case J. McIntyre Machinery, Ltd. v. Nicastro, 131 S.Ct. 2780, 2785 (2011), a products liability case in which the Supreme Court used the "purposeful availment" test.  In Mavrix, however, the Ninth Circuit directly addressed J. McIntyre Machinery and held that it was consistent with the rule that purposeful direction is used for intentional torts such as copyright infringement.  647 F.3d at 1228.  This Court is bound by Mavrix and therefore holds that the purposeful direction test applies.

The Ninth Circuit uses the three-part test outlined in Calder v. Jones, 465 U.S.783 (1984), to evaluate purposeful direction.  To satisfy this test, a defendant "must have 1) committed an intentional act, which was 2) expressly aimed at the forum state and 3) caused harm, the brunt of which is suffered and which the defendant knows is likely to be suffered in the forum state."  Pebble Beach, 453 F.3d at 1156 (internal citations and quotations omitted). "There is no requirement that the defendant have any physical contacts with the forum." Brayton Purcell LLP v. Recordon & Recordon, 606 F.3d 1124, 1128 (9th Cir. 2010) (internal citations and quotations omitted).

### a. Intentional Act

An intentional act refers to "an intent to perform an actual, physical act in the real world, rather than an intent to accomplish a result or consequence of that act." Schwarzenegger, 374 F.3d at 806.  Here, Plaintiffs assert that Defendant's intentional acts are "Defendant's uploading of the DFSB Plaintiff's Works, provision of links to these files, and advertising to his websites."  (Dkt. No. 40 at 4.)  These intentional acts satisfy the first prong of the Calder test.

### b. Expressly Aimed at Forum State

Plaintiffs maintain that Defendant expressly aimed his infringing conduct at California because he operated commercial and interactive websites that "targeted California residents indiscriminately." (Dkt. No. 40 at 3.) The Ninth Circuit has "struggled with the question whether tortious conduct on a nationally accessible website is expressly aimed at any, or all, of the forums in which the website can be viewed." Mavrix Photo, Inc., 647 F.3d at 1229. One rule, however, is clear: "A defendant has not purposefully availed himself of the privilege of conducting activities in a forum state merely because he operates a website which can be accessed there." American Auto. Ass'n, Inc. v. Darba Enter, Inc., 2009 WL 1066506 *4 (N.D. Cal. April 21, 2009); see also Mavrix Photo, Inc., 647 F.3d at 1229 (stating that "maintenance of a passive website alone cannot satisfy the express aiming prong"). On the other hand, "operating even a passive website in conjunction with 'something more'—conduct directly targeting the forum—is sufficient." Id. (internal citations omitted). "In determining whether a nonresident defendant has done 'something more,'[the Ninth Circuit has] considered several factors, including the interactivity of the defendant's website, the geographic scope of the defendant's commercial ambitions, and whether the defendant 'individually targeted' a plaintiff known to be a forum resident." Id. (internal citations omitted).

Plaintiffs argue that Defendant's "website, on its own, is enough to confer personal jurisdiction." (Dkt. No. 47 at 4.) They contend that because Defendant's websites are commercial—that is, he profits from them—and because users had to register with the Websites to fully access the Websites' features, they have satisfied their burden of making a prima facie showing that Defendant directed his unlawful activities at California.

While Defendant's Websites are certainly interactive, their alleged level of interactivity is insufficient in and of itself to support a finding of purposeful direction. The operation of an interactive, commercial website helps determine the *likelihood* that personal jurisdiction can be exercised. Cybersell, Inc. v. Cybersell, Inc., 130 F.3d 414, 419 (9th Cir. 1997). Courts look "to the level of interactivity and commercial nature of the exchange of information that

1  occurs on the Web site to determine if sufficient contacts exist to warrant the exercise of
2  jurisdiction." Id. at 418 (internal quotation marks and citation omitted). In other words, that a
3  website is commercial in nature and interactive does not necessarily mean there is personal
4  jurisdiction.[8] "If the defendant merely operates a website, even a 'highly interactive' website,
5  that is accessible from, but does not target, the forum state, then the defendant may not be
6  haled into court in that state without offending the Constitution." be2 LLC v. Ivanov, 642
7  F.3d 555, 559 (7th Cir. 2011).

8        The cases upon which Plaintiffs rely demonstrate why the facts alleged here are
9  insufficient to show Defendant targeted California. In Quigley v. Guvera IP Pty Ltd., 2010
10 WL 5300867 *4 (N.D. Cal. Dec. 20, 2010), the district court held that the defendant had
11 directly targeted California because the challenged website had a California-specific privacy
12 policy to comply with California law, used a video of a California resident to explain the
13 website's functionality, and provided free music only after users provided personal
14 information that was then matched with advertisers' preferences. Here, in contrast, Plaintiffs
15 do not identify anything on the Websites that is directed to California or even references
16 California. And, while Plaintiffs now allege that users must register to fully access
17 Defendant's Websites—an allegation the Court accepts as true—there is no allegation that
18 Defendant uses the registration information to in any way target the California market, unlike
19 the defendant in Quigley.

20       Similarly, in American Auto. Ass'n, Inc. v. Darba Enterprises, Inc., 2009 WL 1066506
21 *4-5 (N.D. Cal. April 21, 2009), the district court held it had personal jurisdiction of the
22 defendant website operator because users had to enter their contact information on the website
23 in order to obtain any information, the website owner sold that contact information, and
24 California residents who had used the site complained. Further, users had to enter their zip

---

[8] Plaintiffs' assertion that this Court's tentative ruling was based on the finding that Defendant's websites are merely passive (Dkt. No. 47 at 4) is wrong. The question is not whether the Websites are passive or interactive and, if they were interactive (whatever that means), there is personal jurisdiction. The question is what is the nature and quality of the interactivity, if any, and is it sufficient to support a finding of purposeful direction. Cybersell, Inc., 130 F.3d at 419.

10

codes in order to obtain "insurance quotes" from the website, and therefore the court held that it was "reasonable to infer that the third parties to whom defendant sold this contact information targeted potential customers based on their geographic location." Id. at *5. Here, in contrast, while there is now an allegation that users had to register to fully access the Websites, there is no allegation as to what registration information was required and no allegation as to how that information was used to target the California market. Indeed, there is no allegation—and the exhibits do not establish—that users even had to provide addresses or other geographic identifying information to register.

Plaintiffs' lament that they are unable to make any allegation as to how Defendant utilized the registration information because he defaulted and therefore deprived Plaintiffs of discovery (Dkt. No. 47 at 4 n.1) is unavailing. Plaintiffs have not cited any case—and the Court is aware of none—which holds that on a motion for default the Court may assume as true necessary facts that the plaintiff does not even allege (and apparently believes it cannot in good faith allege). Further, Plaintiffs do not explain why they could not have at least discovered what registration information a user was required to provide, as such information would have been available to any Internet user who visited Defendant's Websites. The plaintiff is responsible for conducting sufficient investigation to make a prima facie showing of personal jurisdiction prior to filing a complaint.

At bottom then, Plaintiffs' assertion is that any defendant that operates a commercial website with infringing content which requires users to register with the site can be haled into court in any state in the United States because the defendant has directed its activities at each state, regardless of whether or how that registration information is used. Indeed, at oral argument Plaintiffs asserted that specific jurisdiction of Defendant for the claims in this lawsuit would be proper in any state, even Wyoming. This position, however, ignores the constitutional requirement that the defendant engage in activity expressly aimed at the forum state. Marvitz, 647 F.3d at 1229.

The Ninth Circuit's recent decision in Mavrix Photo, Inc. is apposite. There, the plaintiff Florida corporation brought suit in California against the defendant Brand, an Ohio

11

corporation, for posting the plaintiff's copyrighted celebrity photos on Brand's popular website, www.celebrity-gossip.net. A critical issue on appeal was whether the plaintiff had met its "purposeful direction" burden and, in particular, whether Brand had expressly aimed its conduct at California. The Ninth Circuit held that it had met its burden because Brand had "used [the plaintiff's] copyrighted photos as part of its exploitation of the California market for its own gain." Id. at 1229. In particular, Brand made money by selling advertising space on its website to third-party advertisers, and a substantial number of "hits" to Brand's website came from California residents. The court concluded that it could infer that Brand was making money through these California resident hits because "some of the third-party advertisers on Brand's website had advertisements directed to Californians." Id. These included advertisements for jobs, hotels, and vacations in California. Id. at 1222. Thus, concluded the court, "[t]he fact that the advertisements targeted California residents indicates that Brand knows—either actually or constructively—about its California user base, and that it exploits that base for commercial gain by selling space on its website for advertisements." Id. Further, although Brand did not market its website to California local media, "Brand operated a very popular website with a specific focus on the California-centered celebrity and entertainment industries." Id. The court concluded: "[b]ased on the website's subject matter, as well as the size and commercial value of the California market, . . . Brand anticipated, desired and achieved a substantial California viewer base." Id. at 1230.

Here, Plaintiffs do not allege that any of the advertisements on Defendant's Websites targeted Californians. Their exhibits include two advertisements, one for an Australian dating site and the other regarding a Florida university. Neither can reasonably be interpreted as related to or directed at California.[9] Plaintiffs allege that "it is likely that Defendant had no control over what advertisement was appearing at any given point in time just as the DFSB

---

[9] Plaintiffs note that the dating site promotes itself as "'a leading Korean dating network connecting Korean women and men internationally' and include[s] success stories from individuals around the globe, including the United States." (Dkt. No. 47 at 4 n.2.) They do not allege, however, that the dating site has any particular connection to California, the state where Plaintiffs chose to file this lawsuit.

12

1  Plaintiffs had no control over what advertisements appeared when they captured the
2  screenshots." (Dkt. No. 47 at 5.)  While quite possibly true, the fact remains that the
3  advertisements provided by Plaintiffs do not suggest that Defendant targeted California.
4       Moreover, advertisements were not the only factor considered in Mavrix: the "most
5  salient" fact was "that Brand used Mavrix's copyrighted photos as part of its exploitation of
6  the California market for its own commercial gain."  647 F.3d 1229.  The website itself had "a
7  specific focus on the California-centered celebrity and entertainment industries."  Id. at 1230.
8  Thus, the directed advertisements merely confirmed what was already apparent from the
9  subject matter of the website in question.  In contrast, the subject matter of Defendant's
10 Websites—linking users to other websites where they can download Korean-language
11 songs—is not directly related to California.  Though this music might be popular with some
12 California residents, there is no indication that Defendant knew of a California user base or
13 that he exploited that base.  In essence, Plaintiffs argue that because it would have been a wise
14 business move for Defendant to market his illegal downloads to California residents, he must
15 have done so.  This speculation is not sufficient to make a prima facie showing that Defendant
16 targeted the California market.  If it were sufficient, every person around the globe who makes
17 infringing content available through the Internet for profit would be subject to personal
18 jurisdiction in California.
19      Further, the website at issue in Mavrix allowed for interactivity similar to that alleged
20 here:  visitors could post comments on articles, vote in polls, subscribe to an email newsletter,
21 join a membership club, and submit news tips and photos.  647 F.3d at 1222.  Yet, this
22 interactivity did not fit into the Ninth Circuit's analysis of whether the defendant had
23 expressly aimed his wrongful conduct at California.  Id. at 1229-30.
24      While the commercial and interactive aspects of Defendants' Websites are insufficient
25 in and of themselves to make a prima facie showing of personal jurisdiction—at least based
26 on the record before the Court—the Websites themselves plus "something more" may be
27 sufficient to support a finding that Defendant expressly aimed his conduct at California.
28 Plaintiffs contend that the "something more" is that Defendant utilized accounts on California-

13

headquartered Internet companies Facebook, hi5.com, DeviantArt, and 4Shared to direct traffic to his Websites.  While the location of these companies is relevant for lawsuits directly involving the companies, the Court is unpersuaded that the headquarters of these Internet companies establishes that Defendant expressly aimed his infringing activities at the California market.  To adopt Plaintiffs' reasoning would render the "expressly aimed" prong of the Calder test essentially meaningless as it has become ubiquitous for businesses—large and small—to maintain Facebook and/or other similar accounts for marketing purposes and would subject millions of persons around the globe to personal jurisdiction in California.  See NuboNau, Inc. v. NB Labs, Ltd, 2012 WL 843503 *6 (S.D. Cal. Mar. 9, 2012) (stating that "the Court doesn't find that merely engaging Twitter and Facebook to promote one's business constitutes purposeful direction at California, simply because Twitter and Facebook happen to be based there and require users to litigate all lawsuits arising out of their accounts in California"); cf CollegeSource, Inc. v. AcademyOne, Inc., 653 F.3d 1066, 1075-76 (9th Cir. 2011) (noting that "[i]f the maintenance of an interactive website were sufficient to support general jurisdiction in every forum in which users interacted with the website, the eventual demise of all restrictions on the personal jurisdiction of state courts would be the inevitable result") (internal quotation marks and citation omitted).

The Court recognizes that in DFSB Kollective Co., Ltd. v. Jenpoo, 2011 WL 2314161 (N.D. Cal. June 10, 2011) and DFSB Kollective Co., Ltd. v. Tran, 2011 WL 6730678 (N.D. Cal. Dec. 21, 2011), the district courts granted Plaintiffs' motions for default judgment under similar circumstances to those present here.  In Jenpoo, however, the court did not analyze personal jurisdiction.  The Tran court did substantively address personal jurisdiction and concluded that Plaintiffs had met their burden, in part because the defendant used California companies Facebook, Twitter and YouTube to promote his websites.  Id. at *3.  The court, however, did not cite any authority to support its novel holding, and Plaintiffs have not cited any here.

Finally, Plaintiffs argue that the Court should also consider that Defendant's Websites took revenue away from Plaintiffs' California-based partner, Apple iTunes.   Plaintiffs allege

that "Defendant knew that his offering of illegal downloads of the DFSB Plaintiffs' Properties would hurt the entities who would otherwise be entitled to the revenue received from legitimate music downloads, including not only DFSB Plaintiffs but also Apple iTunes." (Dkt. No. 47 at 5.) This argument, too, would lead to an unprecedented expansion of personal jurisdiction in California; if accepted, the California courts would have personal jurisdiction of virtually any person who illegally offers copyrighted songs on the Internet for commercial gain.

### c. Causing Harm Likely to be Suffered in the Forum State

The third requirement of the Calder test is satisfied where the defendant has "caused harm that it knows is likely to be suffered in the forum state." Mavrix Photo, Inc., 647 F.3d at 1231. In copyright cases this requirement is generally satisfied when the plaintiff resides in the forum state. See, e.g., Brayton Purcell LLP, 606 F.3d at 1131; see also CollegeSource, Inc., 653 F.3d at 1077 (stating that "a corporation incurs economic loss, for jurisdictional purposes, in the forum of its principal place of business"). However, "in appropriate circumstances a corporation can suffer economic harm both where the bad acts occurred and where the corporation has its principal place of business." Dole Food Co. Inc, v. Watts, 303 F.3d 1104, 1113 (9th Cir. 2002). "[T]he 'brunt' of the harm need not be suffered in the forum state. If a jurisdictionally sufficient amount of harm is suffered in the forum state, it does not matter that even more harm might have been suffered in another state." Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme, 433 F.3d 1199, 1207 (9th Cir. 2006). In other words, "the existence of jurisdiction in one forum does not necessarily negate the existence of jurisdiction in another forum." Dole Food Co., 303 F.3d at 1113.

Here, there is no question Plaintiffs were harmed in Korea, their home country. The issue is whether they have demonstrated that they were also sufficiently harmed in California. Plaintiffs first contend that Californians who would have bought copies of Plaintiffs' works from legitimate sources "have been harmed through the downloading of illegal and infringing materials." (Dkt. No. 47 at 6.) There are two problems with this contention. First, Plaintiffs do not explain how California residents were harmed by getting for free what they should

1 have paid for. Second, and more importantly, they also do not explain why it matters whether California residents were harmed. In a copyright case, it is usually the plaintiff—who owns the copyright and thus has standing to bring the lawsuit—who is claiming harm. See, e.g., Mavrix, 647 F.3d at 1222; Brayton Purcell, 606 F.3d at 1126-27.

Plaintiffs also posit that by offering unauthorized copies of Plaintiffs' works, Defendant has affected Plaintiffs' large California market by "decreasing the volume of sales and corresponding revenue there appreciably." (Dkt. No. 47 at 6.) In Mavrix, the Florida plaintiff was harmed because the defendant destroyed the market value of the plaintiff's copyrighted photos of the celebrity couple by publishing infringing photos; in other words, there was no market for the plaintiff's photos once they were already available on the Internet. The court held further that it was foreseeable that this harm would occur in California as well as Florida because "[a] substantial part of the photos' value was based on the fact that a significant number of Californians would have bought publications such as *People* and *Us Weekly* in order to see the photos." Id. at 1231-32.

Plaintiffs likewise intimate that a significant number of Californians would have bought copies of Plaintiffs' works from California-based Apple iTunes given that the United States is Plaintiffs' number one market for Korean music exports, and California has a large Asian-American population. (Dkt. No. 47 at 6, 10 ¶ 3.) Regardless of the location of Apple's headquarters, the Court finds that this allegation is sufficient to satisfy the harm requirement of the Calder test.

### 2. The Remaining Factors: Relatedness and Reasonableness

Since the Court has determined that Plaintiffs have not satisfied the "purposeful direction" requirement of the minimum contacts test, the Northern District of California does not have personal jurisdiction of Defendant. See Pebble Beach, 453 F.3d at 1155. Accordingly, the Court need not address the remaining minimum contact factors.

## CONCLUSION

Plaintiffs have more than sufficiently alleged that Defendant willfully infringed Plaintiffs' copyrights. And the Court recognizes that the illegal downloading of music has

had a significant negative impact on the music industry. The personal jurisdiction inquiry, however, does not depend on whether the Court is convinced the defendant engaged in unlawful and undesirable conduct; instead, under Ninth Circuit law, the plaintiff must make a prima facie showing that the Calder purposeful direction test is satisfied. Plaintiffs have not done so here. The Court is not holding that a foreign plaintiff can never demonstrate that a California court has specific personal jurisdiction of a foreign defendant for making illegal downloads available on the Internet. Rather, before filing suit (and perhaps having the unlawful websites taken down), the plaintiff should conduct sufficient investigation to make a prima facie showing of personal jurisdiction.

Accordingly, the Court RECOMMENDS that Plaintiffs' motion for default judgment be DENIED for lack of personal jurisdiction. Plaintiffs may file objections to this Report and Recommendation under Federal Rule of Civil Procedure 72(b) within 14 days of the filing of this Order.

**IT IS SO ORDERED.**

Dated: August 3, 2012

_____
JACQUELINE SCOTT CORLEY
UNITED STATES MAGISTRATE JUDGE